A. B. Gochenour, Appellee, v. Simon Griever and Mayo Friedberg, Appellants.

Gen. No. 39,797.

Opinion filed May 11, 1938.

SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, of Chicago, for appellants; JESSE H. BROWN, of Chicago, of counsel.

SHULMAN, SHULMAN & ABRAMS, of Chicago, for appellee; MEYER ABRAMS, of counsel.

MR. PRESIDING JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by the defendants from a judgment entered in the circuit court for $3,848.52, based upon an action filed in that court by the plaintiff.

The action is based in part upon a stipulation of facts in which it appears that the plaintiff is the legal holder and owner of the bonds described in the complaint; that the defendant, Simon Griever, filed his petition in bankruptcy, and that the defendant did not know and could not learn the names of any of the officers and several owners and holders of any of the bonds of the issue or series described in the complaint; that an order of discharge was entered; that the defendant, Mayo Friedberg, filed his petition in bankruptcy, and that he did not know and could not ascertain the names of any of the owners and holders of any of said bonds, and that an order of discharge was entered.

From the facts in the record it appears that on June 15, 1927, these defendants executed and delivered their gold bonds Nos. M–51 to M–55 each being for $1,000 and aggregating $6,000, payable to the order of bearer with interest at 6 per cent per annum as evidenced by interest coupons attached thereto, all a part of a series of bonds in the aggregate amount of $180,000 secured by a trust deed executed by the defendants to the Central Trust Company of Illinois. The trustee pursuant to a provision of the trust deed declared the principal of all outstanding bonds to be due and payable. A foreclosure proceeding was filed in the superior court of Cook county, Illinois, and a decree entered finding that there was due to the plaintiff here from the defendants $7,759.90 together with interest thereon at 5 per cent per annum from March 5, 1936. Subsequently a sale was held pursuant to the terms of the foreclosure decree and upon distribution of the proceeds thereof there remained a balance due to the plaintiff here on September 23, 1936, of $3,734.38 plus interest amounting to $124.14, making a total due to the plaintiff of $3,848.52. In June, 1932, before any default occurred, the defendant Simon Griever, filed his petition in bankruptcy in the District Court of the United States for the Northern District of Illinois, Eastern Division, and since, as stipulated, the defendant Simon Griever, did not and could not learn the names of any of the officers and several owners and holders of any of the bonds of the issue or series described in the complaint, he therefore set forth and described said bondholders in schedule A (2) as follows:

"Unknown owners of all of the indebted and outstanding bonds and interest coupons attached thereto described in and secured by the first trust deed conveying property at N. E. corner Austin and Fulton streets, Chicago, Illinois . . . . . . . . . . . . . . . . . . . . . . . . $163,000."

On July 1, 1932, a certificate of publication was filed in said cause, and on October 10, 1932, an order of discharge was entered therein. On May 10, 1929, the defendant Mayo Friedberg, filed his petition in bankruptcy in the District Court of the United States for the Northern District of Illinois, Eastern Division. As stipulated, said defendant did not know and could not ascertain the names of any of the various and several owners and holders of any of said bonds, and he therefore set forth and described said bondholders in schedule A (2) in said petition as follows:

"Holders of notes secured by trust deed on property at the N. E. corner at Austin and Fulton street, (First mortgage on property)...................$180,000."

On June 22, 1929, a certificate of publication was filed in said proceeding and on October 22, 1930, an order of discharge was entered therein, and it is from the judgment entered upon the stipulation of facts that this appeal is being prosecuted by the defendants.

The defendants contend that the issue in this case is whether the discharge which they obtained in their respective bankruptcy proceedings barred plaintiff's claim. Defendant Griever scheduled as creditors the unknown owners of all of the unpaid and outstanding bonds and interest coupons attached thereto described in and secured by the first trust deed. Defendant Friedberg scheduled as creditors holders of notes secured by the trust deed on the property at the northeast corner of Austin and Fulton streets. It is upon this description of creditors in the petition for relief in bankruptcy that the sufficiency of description is questioned.

Plaintiff's answer to the contention of these defendants is that they concede that the sole question is whether or not the two schedules operated as a discharge in bankruptcy; that the defendants did not comply with the Bankruptcy Act by properly describing the

creditors in their schedules filed in their petitions in bankruptcy, and the plaintiff quotes the general rule of law that a discharge does not release the bankrupt from debts which have not been duly scheduled in time for proof and allowance, with the name of the creditor if known to the bankrupt unless the creditor had notice or actual knowledge of the proceedings in bankruptcy. (Citing Corpus Juris, p. 403).

In the instant case it is admitted upon stipulation of the parties that the defendants "did not know and could not learn the names of any of the various and several owners and holders of any of the bonds of the issue or series described in the complaint." Under the authorities of the appeal courts of Illinois the burden of proof rests upon the plaintiff to show that his claim did not come within the terms of the discharge in bankruptcy. In *Van Norman v. Young,* 228 Ill. 425, upon this question the court said:

"The court instructed the jury that the burden of proof was upon the plaintiffs in error to show that their debt from defendant in error was not barred by his discharge in bankruptcy. The authorities upon the question as to where rests the burden of proof in such case are not in entire harmony. We think, however, the better rule is that a discharge in bankruptcy is presumed to cover all the debts of the bankrupt, and that the introduction in evidence by the bankrupt, when sued, of a certified copy of the order of discharge, or other proof of his discharge in bankruptcy, is *prima facie* a bar to the claim sued on, and that the burden of proof is upon the plaintiff to show that the claim sued on is not within the terms of the bankrupt's discharge. (Collier on Bankruptcy, p. 174; Brandenburg on Bankruptcy, sec. 433.) In *Sherwood v. Mitchell,* 4 Denio, 435, it is said: 'The discharge is presumptive evidence of all the facts asserted in it, and is conclusive until overthrown by evidence of some fraud which by the act

avoids it. Debts arising out of a violation of an official or private trust are not affected by it unless the creditor chooses to prove the demand under the bankruptcy. The discharge, it is true, is general in its terms, and *prima facie* is a discharge of the bankrupt from all his debts. But the creditor may, notwithstanding show that his debt is of the excepted class. The *onus*, however, is on him, and if he fails to make the proof the debt will be taken to be one of an ordinary character.' ''

To a like import is the case of *Vandervoort v. Flaherty,* 257 Ill. App. 480, and *Alling v. Straka,* 118 Ill. App. 184.

It is contended by the defendants and it was stipulated that the defendants did not know and were unable to ascertain the names of the owners and holders of the bonds, which obviously included the plaintiff. The plaintiff failed to sustain the burden of proof as required. In addition, there is no showing that there were any assets in the bankruptcy estate and that the plaintiff was injured by not having proved his claim. From the stipulation it is apparent that there was no fraud, and the good faith of the defendants is not questioned.

The plaintiff points to the fact that the debt of the bond issue, as well as the name of the maker, was not described, nor was the name of the trustee set forth in the schedule, and thereby the schedule failed to give the names of the creditors so as to give to them and to the trustee full, accurate and early information as to the condition of the estate, as required by the Bankruptcy Act.

This fact is disputed by these defendants, and they point to the case of *Fitkin v. Century Oil Co.,* 16 F. (2d) 22, wherein the court said:

''The mortgage by its terms in no way confers upon the appellee rights, other than those usual, to enforce payment of the notes, in the event of default, out of

the security held by it as trustee. The appellee was not a creditor of the LaPorte corporation, nor did it become assignee, by reason of the terms of the mortgage or otherwise, or attorney in fact for the owners or holders of the outstanding notes, with respect to anything except the mortgaged property. The notes are payable to the bearer thereof, or, if the notes be registered, to the registered holder thereof on the due date.

" . . . It thus appears that the trustee, in representing the note holders and enforcing their rights as such trustee, is restricted to the rights conferred under this indenture 'with reference to the mortgaged property.' The purpose of this clause was to permit the foreclosure of the lien held by the trustee for the benefit of the note holders in the event of default, or to take such other action as may be necessary to make valid the lien granted upon the securities and the property transferred to the appellee as security for the payment of the notes."

The plaintiff argues that while a "naked" trustee may not file a claim for the bondholders in bankruptcy, the rule is different when the trustee is active and where the debt is payable to the trustee, and points to certain provisions of the trust deed.

One of the articles of the trust deed called to the attention of the court is article VII, which provided that upon default in the payment of principal or interest the trustee had the right to declare the whole bond issue due, and the trustee had the right to waive default.

Section 5 of the trust deed authorized the trustee upon default to proceed to protect and enforce its rights and the rights of all bondholders in this indenture by proceedings at law or in equity, whether for the specific performance of any covenants or agreement

herein contained or in aid of the execution of any power herein granted.

Section 10 vested the exclusive right of action in the trustee.

In the consideration of these provisions, the court has in mind that under section 10 of article VII the exclusive right of action under the trust deed alone is vested in the trustee. In the case of *Oswianza v. Wengler & Mandell,* 358 Ill. 302, the Supreme Court held that such a provision does not affect the right of a bondholder to sue at law upon his bond.

There is nothing called to our attention which would authorize the trustee to file a claim in bankruptcy; that right is solely vested in the holders of the bonds. In *United States Trust Co. v. Gordon,* 216 Fed. 929, the court said: "The bondholders were clearly creditors of the bankrupt, and under section 57 of the Bankrupt Act (Act July 1, 1898, c. 541, 30 Stat. 560 (U. S. Comp. St. 1901, p. 3443) had the right to prove their claims as such, unless the mortgage has given the trustee a superior right. The mere fact that the trustee holds the legal title to the security, does not necessarily make it, in equity, a creditor with respect to the debt itself." This statement of the court that only the trustee holds the legal title to the security, does not in effect make the trustee a creditor.

Plaintiff states it is true that in the *Fitkin* case (16 F. (2d) 22), it was held that a trustee may not file a claim in bankruptcy. However, the case was distinguished in *Seaboard National Bank v. Rogers Milk Products Co.,* 21 F. (2d) 414, and in *In re United Cigar Stores Co.,* 68 F. (2d) 895. It was squarely held that a trustee under a bond issue is entitled to file a claim, and the fact that the bondholders themselves are creditors does not prevent the trustee from filing a claim, and the effect of the filing of the claim by the bondholders merely reduces the amount of the claim

of the trustee. In pointing to the decision in the *Fitkin* case the court said:

"That, in such a situation the promisee could not prove a claim in bankruptcy was all that we decided in *Fitkin v. Century Oil Co.*, 16 F. (2d) 22, where the mortgagor's covenant with the trustee mortgagee was only to pay the bondholders; payment to them was not payment to him. However, in the case at bar the covenant was to pay the trustee itself, and its damages for the amount payable. It is true that it was to hold the money in trust, but if that were a defense in the case of any contract made with a trustee, the *cestui que* trust alone could recover substantial damages. That has never been the law. . . . Therefore the case is one in which both the trustee and the bondholders have rights of action; the principal promised to pay each."

The defendants, however, call our attention to what was further said in the *Seaboard National Bank* case as having a material bearing upon the question of the right of the trustee to file a claim for the bondholders. The court said:

"It is urged that the mortgage trustee has not such an interest as entitles him to maintain this appeal, and that *Fitkin v. Century Oil Co.*, 16 F. (2d) (C. C. A. 2), so decides. That case held that the trustee was not a creditor, and could not prove the claims of mortgage bondholders who had not appeared for themselves. There the property had not been sold free of liens; the trustee was insisting upon the validity of the mortgage, and was attempting to prove a claim as creditor in order to protect bondholders in case there should be a deficiency after the security was realized. It was held merely that he was not a creditor. *Brant, etc., Co. v. Palmer*, 262 F. 370 (C. C. A. 8); *In re U. S. Leatheroid Co.*, 285 F. 884 (D. C. Mass.). Compare *Lane v. Equitable Trust Co.*, 262 F. 918 (C. C. A. 8). Here the trustee is not claiming as a creditor. He is

asserting his lien upon the fund, claiming that he holds such lien in trust to secure all valid bonds, just as before the sale he held the mortgage lien upon the land. The distinction between asserting rights to his lien and claiming as a creditor is recognized by dictum in *Mackay v. Macon Coal Co.,* 178 F. 881, 884 (C. C. A. 8). Doubtless the court may in its discretion distribute the fund directly to the bondholders, instead of turning it over to the mortgage trustee for distribution. *United States Trust Co. v. Gordon,* 216 F. 929 (C. C. A. 6); *In re Chambersburg Silk Mfg. Co.* (D. C.) 190 F. 411 (M. D. Pa.). But we see no reason why the trustee, when distribution is threatened, in utter disregard of the rights of bondholders, may not assert his lien to protect their rights. Neither the Fitkin Case nor any other authority which has come to our attention is adverse to this view.''

While we have not discussed all the authorities cited, it is apparent, as we have already stated, that the defendants acted entirely in good faith in the preparation of their bankruptcy schedules. According to the stipulation of the parties the defendants did not know and were unable to learn the names of the individual bondholders, and therefore scheduled them as unknown. The mortgage trustee was not a creditor within the meaning of the Bankruptcy Act, nor was he authorized to file a claim under the terms of the mortgage. The discharge in bankruptcy procured by the defendants barred the present action, and the judgment of the circuit court is therefore reversed.

*Judgment reversed.*

Denis E. Sullivan and Hall, JJ., concur.