## SPITZ v. FOX METROPOLITAN PLAYHOUSES, Inc.

## CENTRAL HANOVER BANK & TRUST CO. et al. v. FOX METROPOLITAN PLAYHOUSES, Inc., et al.

District Court, S. D. New York.

April 17, 1933.

Larkin, Rathbone & Perry, of New York City, for Central Hanover Bank & Trust Co.

Jackson, Fuller, Nash & Brophy, of New York City, for Henry Spitz.

Telsey & Young, of New York City, for Randforce Amusement Corporation.

Beekman, Bogue & Clark, of New York City, for Fox Metropolitan Playhouses, Inc.

Thomas & Friedman, of New York City, for Stanley-Mark Strand Corporation.

Nathan Burkan, of New York City, for Namievilla Holding Co., Inc., and Lelesjo Holding Co., Inc.

Dawes, Abbott & Littlefield, of New York City, for receivers.

CAFFEY, District Judge.

The receiver, as was prudent, if not, indeed, an absolute duty, in view of the condition of the court decisions pertinent for consideration on the subject, has asked that a claim filed by the mortgage trustees for approximately $800,000 of notes and debentures (hereinafter called notes), issued by the defendant and outstanding in the hands of the public, be expunged. The holders of these notes have filed no claims. Under the court order excluding from participation in the trust estate those who shall fail to file by a prescribed date, the time for filing has expired. In other words, there is no duplication of filing by the mortgage trustees and the actual holders; furthermore, if the claim filed by the trustees be stricken out, there will be no claim on file for the $800,000 of notes we are here dealing with.

If the request of the receiver were granted, the claim would thereby be wholly disallowed; the claimant would be deprived of opportunity for a hearing before the master, hereafter to be appointed, upon the issue as to whether the claim should be allowed.

I shall restrict myself to the precise question raised. I ought to do that in any event. I am, however, particularly moved to do so in the circumstances. Those are that Judge Mack is in general charge of the receivership; he is temporarily out of the district; upon his return, it is probable that at a later stage he will be called on to determine the merits of the particular claim when the master's report on all claims comes in—and when there will arise the problem of marshaling and distribution of the entire assets or their proceeds among the several classes of creditors. Moreover, the minutes of an interview on September 23, 1932, with counsel, in advance of the claim being filed, disclose that Judge Mack anticipates that solution of the problem may compel him to decide what effect is to be given to Merrill v. National Bank of Jacksonville, 173 U. S. 131, 19 S. Ct. 360, 43 L. Ed. 640. Manifestly, unless unavoidable, no action should be taken at this time which, by establishing the law of the case [Commercial Union of America v. Anglo-South American Bank (C. C. A.) 10 F.(2d) 937] or in any other way, will embarrass or prevent the carrying out of that program.

It is to be noted that we are not now concerned with interest on the notes. So also we are not now concerned with any controversy between the noteholders themselves and the trustees. The claim as filed is solely for the amount of notes whose holders have

absented themselves from the present suits. The noteholders who have already appeared, either individually or by committee, have affirmatively said that they do not object, or have interposed no objection, to the $800,-000 claim remaining on file or even to its being allowed.

It is to be observed further that there may be other classes of creditors, not served with notice of the receiver's pending application, who may desire to contest, or actually may contest, allowance of the claim. It is out of abundance of caution to make clear that nothing now done shall be deemed prejudicial to the rights of such potential or prospective contestants that I emphasize that my determination goes no further than is necessary at the moment.

After examining the variety of clauses in the mortgages involved in the several court decisions discussed by counsel, I feel that it would serve no useful purpose to indulge in extensive comments. Moreover, it would require a good deal of time to cover all the details and to point out with care the reasons for discrimination. I shall therefore dispose of the matter in rather brief form.

In article 7 of the mortgage under consideration, section 9 specifically authorizes the mortgage trustees to file claims on behalf of noteholders in receivership proceedings, and section 11 may be fairly construed to include in the agency, there conferred by the noteholders on the trustees, power to file claims in such circumstances. In view of those provisions, it seems to me that expunging the claim summarily would ignore or nullify the explicit terms of the arrangement, set out in the mortgage, on the faith of which the holders acquired the notes and since then have had the right to rely. I see nothing in sections 14 and 15 of the same article, or elsewhere in the mortgage, to diminish or to qualify the field of operation which otherwise would naturally be assigned to sections 9 and 11 of article 7 as I have interpreted them.

The reasoning of Judge Mack in the International Match Corporation Case (3 F. Supp. 445) tends to sustain my conclusion, though the language in the mortgage now under review is more strongly in favor of that conclusion than was the language of the mortgage before him. The differences between the mortgages before the court in Fitkin v. Century Oil Co. (C. C. A.) 16 F.(2d) 22, and In re Indiana Flooring Co. (D. C.) 53 F.(2d) 263, and the mortgage before me are quite sufficient to remove the instant inquiry from anything that was ruled in either of those cases.

Motion denied.